IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
Miami Division

| | |
|---|---|
| ISIDRO SUAREZ, MARIBEL ALMAGUER, MARTHA MORO, and MARIA L. ALMAGUER, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NATIONSTAR MORTGAGE LLC, d/b/a Mr. Cooper<br><br>Defendant. | Case No.: 1:23-cv-20114-JAL |

**NATIONSTAR MORTGAGE LLC d/b/a MR. COOPER MOTION TO DISMISS AND MEMORANDUM OF SUPPORT**

Nationstar Mortgage LLC d/b/a Mr. Cooper (**Nationstar**) moves to dismiss plaintiffs Isidro Suarez, Maribel Almaguer, Martha Moro, and Maria L. Almaguer (the **Suarezes**)'s complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## I. INTRODUCTION

The Suarezes filed this lawsuit as a last ditch effort to avoid the consequences of their serious mortgage default. Their lender already obtained foreclosure judgment and proceeded to sale. It unwound the foreclosure due to Mr. Suarez's subsequent bankruptcy filing. The bankruptcy court quickly dismissed, and the lender now only awaits the new foreclosure date.

But in another obvious tactical maneuver, the Suarezes asked the lender's foreclosure counsel to provide the amount necessary to settle the foreclosure action. Counsel responded by sending settlement correspondence that included an itemization of the amounts comprising the

1

lender's demand. The Suarezes filed this suit against Nationstar, the loan servicer, only 2 days after receiving the letter. They claim the settlement letter was Nationstar's attempt to collect fake and unauthorized debt. Specifically, they allege Nationstar violated the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (**FDCPA**), Florida Consumer Collection Practices Act, Fla. Stat. § 559.72 (9) (**FCCPA**), and Fl. Stat. § 701.04 because foreclosure counsel listed 6 loan charges the lender sought reimbursement for in the letter. However, the Suarezes have not and cannot meet their statutory requirements to state a claim.

First, the settlement letter was not a debt collection attempt that could subject Nationstar to FDCPA or FCCPA regulation. It was a settlement communication foreclosure counsel provided at the Suarezes' request to promote litigation resolution. Nationstar also could not violate the FDCPA or FCCPA by counsel including the specific charges in U.S. Bank's settlement demand because the Suarezes' mortgage expressly allows the charges the Suarezes dispute.

Second, the Suarezes did not trigger Nationstar's mandatory compliance with Fla. Stat. § 701.04. Nationstar does not hold the mortgage and the Suarezes did not request a payoff statement from Nationstar, both of which are fundamental prerequisites to bringing a claim under the statute.

Third, the litigation privilege bars the Suarezes' FCCPA and Fla. Stat. § 701.04 causes of action. The communication at issue directly related to settling pending foreclosure litigation.

And fourth, the Suarezes failed to comply with the mortgage's notice and opportunity to cure provision. Accordingly, they did not meet the condition precedent to filing this lawsuit.

Nationstar respectfully requests the Court dismiss with prejudice.

## II.      STATEMENT OF FACTS

Isidro Suarez, Martha Moro, and Maria L. Almaguer obtained a $432,600 loan to purchase property located at 4470 SW 1st Street, Miami, Florida 33134. (Compl. ¶ 24 and Ex. A, B.) They,

along with Maribel Almaguer, secured the loan with a mortgage recorded with the Miami-Dade County Clerk of Court on November 30, 2006. (*Id.*)

The mortgage contains a "Protection of Lender's Interest in the Property and Rights Under this Security Instrument" provision, which allows the lender to "do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under [the mortgage]" if the Suarezes default. (*Id.* at Ex. A, ¶ 9.) This includes, among other things, assessing the property value, securing and/or repairing the property, entering the property, and paying reasonable attorney's fees to protect the lender's interest in the property. (*Id.*) Any amounts disbursed to protect the lender's interest become additional debt. (*Id.*)

The mortgage likewise contains a "Loan Charges" provision, which allows the lender to charge the Suarezes fees for services performed in connection with their default. (*Id.* at Ex. A, ¶ 14.) This includes, but is not limited to, attorney's fees, property inspection fees, and valuation fees. (*Id.*) The provision expressly states the lender is not prohibited from charging a fee simply because the mortgage does not itemize such fee. (*Id.*)

The Suarezes defaulted on their loan repayment obligations. (*Id.* at ¶ 31.) Nationstar began servicing the loan and subsequently agreed to modify it, which allowed the Suarezes to cure their arrears. (**Exhibit 1** - Foreclosure Complaint at Ex. C.) However, the Suarezes defaulted again by failing to pay their March 2017 payment and all subsequent payments. (*Id.* at ¶ 7.)

U.S. Bank National Association, as Trustee, successor in interest to Wilmington Trust Company, as Trustee, successor in interest to Bank of America National Association, as Trustee, successor by merger to LaSalle Bank National Association, as Trustee for Lehman XS Trust Mortgage Pass-Through Certificates, Series 2007-3 (**U.S. Bank**), the current loan owner, filed

foreclosure against the Suarezes on September 7, 2017.  (*Id.*)  The court entered final foreclosure judgment on October 29, 2019.  (**Exhibit 2** – Foreclosure Judgment.)

U.S. Bank conducted the foreclosure sale and purchased the property at the sale, but Isidro Suarez filed a bankruptcy action later the same day.  (**Exhibit 3** – Motion to Vacate.)  The court vacated the sale at U.S. Bank's request due to the bankruptcy filing.  (**Exhibit 4** – Order Vacating Sale.)  The bankruptcy court quickly dismissed Mr. Suarez's bankruptcy action, and the foreclosure court set a new foreclosure sale for April 10, 2023.  (Ex. 3, 4.)

The Suarezes' counsel subsequently requested the amount to settle U.S. Bank's foreclosure lawsuit from U.S. Bank's foreclosure counsel.  (Compl. at Ex. C (p. 2).)  U.S. Bank's counsel sent a letter listing the "total amount necessary to settle [the] action" in response.  (*Id.*)  The December 7, 2022 letter included the following, in bold writing:

> **This is NOT a demand for payment.  This letter is provided for informational purposes only at your request.**
>
> \* \* \*
>
> **PAYOFF (*provided for settlement purposes only*)**

(*Id.*)  The cover page to the letter also stated, "the following payoff amount represents the total amount necessary *to settle this action*." (*Id.* at Ex. C (p. 1) (emphasis added).)

The Suarezes did not pay the amount stated in the letter and have not satisfied the foreclosure judgment.  (**Exhibit 5** – Foreclosure Docket.)  Instead, they filed this suit against Nationstar for alleged FDCPA, FCCPA, and Fla. Stat. § 701.04 violations.  (Compl. ¶¶ 45-73.) Their allegations center on the below fees foreclosure counsel included in the settlement letter for which U.S. Bank seeks reimbursement:

| | |
|---|---|
| Winterization (Servicer) | $75.00 |
| Property Preservation | $2,712.50 |
| Third Party Reconveyance Preparation Fee | $20.00 |
| Payoff Quote Fee (Servicer) | $50.00 |
| Documentary Tax Stamps | $48.60 |
| Hazard Inspection (Servicer) | $35.00 |

The Suarezes claim these fees were illusory, made up, and/or not permitted by the loan documents. (*Id.* at ¶ 28.) However, they do not provide any factual basis for their assumptions. (*See* Compl.) The Suarezes simply conclude "the Winterization fee is nonsensical given that the subject property is located in South Florida." (*Id.* at ¶ 28.)

### III.   REQUEST FOR JUDICIAL NOTICE

Nationstar requests the Court take judicial notice of Exhibits 1 through 5 because they are pleadings and orders publicly filed in the Suarezes' foreclosure litigation. A court may judicially notice matters of public record. Fed. R. Evid. 201. Matters of public record include documents filed in litigation because their accuracy is not subject to reasonable dispute. *Chinn v. PNC Bank, N.A.*, 451 Fed. Appx. 859, 860 n.1 (11th Cir. 2012) (a court may take judicial notice of public records); *see also Harris v. Cnty. of Orange*, 682 F.3d 1126, 1132 (9th Cir. 2012).

### IV.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)). The plausibility standard requires plaintiff show that success on the merits is more than a "sheer possibility." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct

alleged . . . . Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* (quotations omitted). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Twombly,* 550 U.S. at 555. Conclusory allegations masquerading as facts will not prevent dismissal. *Oxford Asset Mgmt. v. Jaharis,* 297 F.3d 1182, 1188 (11th Cir. 2002). The Court may consider the complaint's exhibits in determining whether plaintiff stated a claim. *See Grossman v. Nationsbank*, N.A., 225 F.3d 1228, 1231 (11th Cir. 2000).

## V.     ARGUMENT

**A.     The Suarezes Cannot State an FDCPA Claim.**

Plaintiff must demonstrate the following to state an FDCPA claim: "(1) the plaintiff has been the object of collection activity arising from consumer debt[;] (2) the defendant is a debt collector as defined by the FDCPA[;] and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Ledwitz v. Naderpour & Assocs, PA*, 544 F.Supp.3d 1305, 1308 (S.D. Fla. 2021) (quoting *Kaplan v. Assetcare, Inc.*, 88 F.Supp.2d 1355, 1360-1361 (S.D. Fla. 2000)). The Suarezes cannot meet the first or third elements.

   *1.     The settlement letter does not constitute debt collection*

The Eleventh Circuit recently clarified what constitutes debt collection under the FDCPA. Debt collection communications include correspondence "plausibly aimed, at least in part, to induce [the recipient] to pay." *Lamirand v. Fay Servicing, LLC*, 38 F.4th 976, 980 (11th Cir. 2022). Correspondence may constitute an attempt to collect debt if it states "this is an attempt to collect a debt," requests or demands payment of a certain amount by a certain date, provides for a late payment fee, and the parties' relationship suggests the correspondence is an attempt to collect a debt. *Daniels v. Select Portfolio Servicing, Inc.*, 34 F.4th 1260 (11th Cir. 2022).

In contrast, communications merely providing information and explicitly informing the recipient that the author is not attempting to collect debt or demand payment are not subject to FDCPA regulation. *Hasbun v. Recontrust Co., N.A.*, 508 Fed. Appx. 941, 942 (11th Cir. 2013) (dismissing complaint because letter explicitly informed borrower that defendant "was not demanding payment of a debt"); *Prindle v. Carrington Mortg. Servs, LLC*, No. 3:13-cv-1349-J-34PDB, 2016 WL 4369424, at *6 (M.D. Fla. Aug. 16, 2016).

The language the author uses in the correspondence is important. *Parker v. Midland Credit Mgmt., Inc.*, 874 F.Supp.2d 1353, 1358 (M.D. Fla. 2012) (citing *South v. Midwestern Audit Servs, Inc.*, 2010 WL 5088765, at *5 (E.D. Mich. Aug. 12, 2010)). "An animating purpose of the communication must be to induce payment by the debtor" to constitute debt collection. *Grden v. Leikin Ingber & Winters PC*, 643 F.3d 169, 173 (6th Cir. 2011). Therefore, courts hold a communication is not debt collection if the author sent it in response to the borrower's inquiry or request, it states "this is not an attempt to collect a debt," and it shows the author's intent to provide the borrower information. *Grden*, 643 F.3d at 173; *Bohringer v. Bayview Loan Servicing, LLC*, 141 F.Supp.3d 1229, 1242-1243 (S.D. Fla. 2015); *Parker*, 874 F.Supp.2d at 1357-1358.

The December 7, 2022 settlement letter did not meet any required debt collection element or show Nationstar sought to induce payment. Counsel did not state "this is an attempt to collect a debt," request or demand payment, or list a late payment fee if the Suarezes did not pay the funds by a certain date in the letter. (Compl. at Ex. C.) The parties' relationship also confirms Nationstar (as U.S. Bank's servicer) was not attempting to collect a debt through the letter. U.S. Bank already obtained a foreclosure judgment. (Ex. 2.) The property would have remained foreclosed but for Mr. Suarez's voluntary bankruptcy filing. (Ex. 3.) Mr. Suarez's bankruptcy is the only reason a foreclosure action remains pending. (Ex. 3, 4.) U.S. Bank already set another foreclosure sale,

confirming it seeks to foreclose, not collect payment. (Ex. 4.)  U.S. Bank's counsel only sent the Suarezes' counsel the letter to settle the lawsuit.  (Compl. at Ex. C.)  The letter stated the amount to settle the foreclosure claims, it did not demand payment on the debt.  (*Id.*)

Instead, the letter includes the non-debt collection aspects discussed in *Hasbun*, *Grden*, *Bohringer*, and *Parker*.  First, foreclosure counsel stated, in bold lettering at the top of the first page, "**[t]his is NOT a demand for payment.**"  (Compl. at Ex. C (p. 2).)  Second, the face of the letter confirms counsel's intent to merely provide information by stating, in two other places, it sent the letter "**for settlement purposes only**."  (*Id.* at Ex. C (pp. 1, 2).)  Third, counsel sent the letter in response to the Suarezes' inquiry, not to demand payment.  Counsel expressly stated in the letter that "[r]ecently, you asked our firm for information concerning a settlement of the claims made against you in this lawsuit."  (*Id.* at Ex. C (p. 2).)

The letter's language confirms Nationstar was not seeking payment on the already foreclosed debt.  This lawsuit is an obvious gotcha attempt and improper tactic to avoid the foreclosure sale.  Nationstar and U.S. Bank did not affirmatively demand anything; U.S. Bank is set to proceed with selling the property.  The Suarezes are merely trying to game the system by requesting an amount to settle the foreclosure action before U.S. Bank completes the sale.

   2. *Nationstar did not violate the FDCPA*

Even if the communication constituted an attempt to collect debt, the Suarezes still cannot meet the third FDCPA cause of action element.

The Suarezes claim Nationstar violated FDCPA §§ 1692e and 1692f by including the at-issue fees in U.S. Bank's settlement demand.  (Compl. at Count I.)  A debt collector violates FDCPA § 1692e by using false, deceptive, or misleading representations in connection with collecting a consumer debt or by misrepresenting the character, amount, or legal status of the debt.

15 U.S.C. § 1692e.  It likewise violates FDCPA § 1692f by using unfair or unconscionable means to collect or attempt to collect a debt, including the collection of any amount not expressly authorized by the agreement creating the debt or permitted by law.  15 U.S.C. § 1692f.

The Suarezes merely conclude—without any factual support whatsoever—that Nationstar made up the winterization, property preservation, third party reconveyance, payoff quote, documentary tax stamps, and hazard inspection fees.[1]  (Compl. ¶ 28.)  They also assert that, even if the charges are real, Nationstar had no authority to charge them to the Suarezes' loan.  (*Id.* at ¶¶ 28, 58.)  The Suarezes' allegations are nothing more than a recitation of what constitutes an FDCPA violation.  *See* 15 U.S.C. § 1692e (debt collector cannot misrepresent the debt amount); 15 U.S.C. § 1692f (debt collector cannot collect amounts not authorized by agreement or law).  They do not plead actual content showing Nationstar's liability for the alleged misconduct, such as why they believe the charges are fake or what mortgage provision prohibits the disputed fees.  The Supreme Court mandates that the Suarezes cannot state a claim for relief through their conclusory statements masquerading as factual contentions.  *Twombly,* 550 U.S. at 555.

The rest of the Suarezes' complaint confirms their allegations are pure speculation.  It seems the Suarezes simply believe the fees were unnecessary and, thus, must be fake.  (*See* Compl. ¶ 3 (discussing preservation fees where borrowers remain in the property), 28 (alleging winterization is not necessary in Florida).)  The Suarezes' subjective beliefs about the fees' necessity does not mean Nationstar did not incur the fees or had no authority to charge the fees to the loan.  *See Twombly,* 550 U.S. at 555.

---

[1] The Suarezes actually state Nationstar falsely imposed "Auctioneer Costs" under their FDCPA count.  (Compl. ¶ 53, 54.)  It appears the Suarezes simply copied and pasted from another complaint.  *See also* the Suarezes' reference to "Shellpoint" throughout the complaint.  (*Id.* at ¶¶ 20, 22, 23, 41.)

The mortgage also expressly authorizes each fee the Suarezes dispute. As to the winterization, property preservation, and hazard inspection fees, the Suarezes agreed the lender could winterize, preserve, and inspect the property if they defaulted. (Compl. at Ex. A (¶ 9).) Specifically, the lender can do and pay for "whatever is reasonable" to protect its interest in the property. (*Id.*) This explicitly includes securing, entering, and repairing the property and assessing its value. (*Id.*) Securing the property "includes, *but is not limited to*, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes [also known as "winterizing"], eliminate building or other code violations or dangerous conditions, and have utilities turned on or off." (*Id.* (emphasis added).); *see also Erdberg v. Five Brothers Mortgage Co. Servs & Securing, Inc.*, No. 2:16-cv-01880-SGC, 2019 WL 995888, at *8 (N.D. Ala. Mar. 1, 2019) (explaining vendor's winterization of property in connection with shutting off water).

The documentary tax stamps and third party reconveyance preparation fees relate to the documents and pleadings U.S. Bank prepared to unwind the foreclosure sale. (Ex. 3, 4.) This was due to Mr. Suarez's last minute bankruptcy filing. (Ex. 3.) The mortgage also authorizes these fees. Specifically, the lender can pay whatever is reasonable to protect its rights under the mortgage and may charge fees for any services performed in connection with the Suarezes' default. (Compl. at Ex. A (¶¶ 9, 14).) U.S. Bank incurred the fees to protect its mortgage rights while Mr. Suarez's bankruptcy was pending. Unwinding the foreclosure directly related to the Suarezes' default. But for their default, no foreclosure sale would have been necessary.

The mortgage likewise authorized the payoff quote fee. The Suarezes requested the amount necessary to settle the foreclosure action. (*Id.* at Ex. C.) The foreclosure and related settlement demand occurred as a direct result of the Suarezes' default. (Ex. 1.) Mortgage paragraph 14 permits the charge. (Compl. at Ex. A (¶ 14).)

10

Moreover, the Suarezes agreed to a catchall provision in the mortgage: the lender is not prohibited from charging a fee simply because the mortgage does not itemize the fee. (*Id.*) No mortgage provision prohibits the fees the Suarezes dispute. (*See id.* at Ex. A.)

The Suarezes have not and cannot establish Nationstar misrepresented the debt amount or charged unauthorized fees. Their FDCPA §§ 1692e and 1692f claim fails.

**B.     The Suarezes Cannot State an FCCPA Claim.**

The FCCPA prohibits an attempt or threat to enforce a debt when the person "knows that the debt is not legitimate" or "knows that the right does not exist." Fla. Stat. § 559.72(9). Accordingly, an FCCPA claim for illegal debt collection has three elements: (1) an illegitimate debt, (2) defendant's threat or attempt to enforce that debt, and (3) defendant's knowledge that the debt is illegitimate. Fla. Stat. § 559.72(9). *Davis v. Sheridan Healthcare, Inc.*, 281 So. 3d 1259 (Fla. 2nd DCA 2019). The "knowledge" under § 559.72(9) must be "actual" knowledge. *Cornette v. I.C. System, Inc.*, 280 F.Supp.3d 1362, 1371 (S.D. Fla. 2017). The FCCPA does not provide for liability where a creditor merely should have known the debt was not legitimate. *Id.*

The Suarezes do not allege anything new in their FCCPA count. (Compl. at Count II.) They only conclude Nationstar violated the FCCPA by collecting "these fees" when it knew they were not legitimate and it had no collection right. (*Id.* at ¶¶ 65, 66.) But Nationstar was not collecting the fees. U.S. Bank's foreclosure counsel conveyed the amounts necessary to "settle" the foreclosure action. (*Id.* at Ex. C.) Even if the Court construes the letter as an attempt to collect debt, the fees are legitimate and authorized for the reasons explained above. *See* § V.(A.)(2.) *supra*. The Suarezes' legal conclusions to the contrary cannot save their complaint from dismissal.

Moreover, the Suarezes' speculate that Nationstar "knew" the fees listed in foreclosure counsel's settlement letter were illegitimate. (Compl. ¶¶ 65, 66.) They do not offer any plausibly

11

pled factual allegations to support this conclusion. The fact that the mortgage allows the charges and an attorney authored the letter belies the Suarezes' assumptions.

**C.     The Suarezes Cannot State a Fla. Stat. § 701.04 Claim.**

The Suarezes allege Nationstar violated Fla. Stat. § 701.04 by including charges in the settlement letter that were not properly due under their mortgage. (Compl. ¶ 71.) The Court can easily dispose of the Suarezes' Fla. Stat. § 701.04 claim.

Fla. Stat. § 701.04 requires the holder of a mortgage deliver a payoff statement that includes principal, interest, and charges properly due within 14 days after the borrower's demand. Fla. Stat. § 701.04(1). Nationstar cannot have liability under the statute for two reasons:

First, Nationstar does not hold the mortgage. It services the mortgage on behalf of the noteholder and mortgagee, U.S. Bank. (Ex. 1, 2.)

Second, the Suarezes did not request Nationstar provide them a payoff statement. They requested U.S. Bank's foreclosure counsel provide them the amount necessary to settle the foreclosure action. (Compl. at Ex. C.) U.S. Bank's foreclosure counsel provided the Suarezes the December 7, 2022 settlement letter in response. (*Id.*) Fla. Stat. § 701.04 does not apply.

Even if the Suarezes triggered the statute's application, Nationstar did not purportedly "charge" any amounts not properly due for the reasons stated above. *See* § V.(A.)(2.) *supra*.

**D.     The Litigation Privilege Bars the Suarezes' FCCPA and Fla. Stat. § 701.04 Claims.**

The Suarezes also cannot prevail on their FCCPA and Fla. Stat. § 701.04 claims because they are subject to the litigation privilege.

"Under Florida law, absolute immunity attaches to any act occurring during the course of a judicial proceeding, so long as the act has some relation to the proceeding." *Solis v. CitiMortgage, Inc.*, 699 F. App'x 891, 894 (11th Cir. 2017). The privilege applies to state statutory

violations. *Levin, Middlebrooks, Mabie, Thomas, Mayes & Mitchell, P.A. v. U.S. Fire Ins. Co.*, 639 So.2d 606, 608 (Fla. 1994). The Court can consider the privilege at the motion to dismiss stage when the complaint affirmatively and clearly shows the privilege's conclusive applicability. *Jackson v. BellSouth Telecomm.*, 372 F.3d 1250, 1277 (11th Cir. 2004).

The Suarezes, by attaching the December 7 settlement letter to their complaint, conclusively show the litigation privilege applies. (Compl. at Ex. C.) U.S. Bank's foreclosure counsel sent the letter in connection with settling the foreclosure action. (*Id.*) Counsel explicitly sent the letter "for settlement purposes only." (*Id.* at Ex. C (pp. 1, 2).) Counsel also stated in several places in the letter that it would dismiss the foreclosure action if the Suarezes paid the settlement demand amount. (*Id.*) Counsel solely generated and provided the letter to resolve the issues in the foreclosure litigation. The Suarezes cannot now assert state statutory causes of action based on the letter. *See, e.g., Levin*, 639 So.2d at 608.

**E.     The Suarezes did not Comply with the Notice and Opportunity to Cure Provision.**

Even if the Suarezes can overcome each of the above defenses, their lawsuit still fails. The mortgage contains a pre-suit notice requirement.

> Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or a member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action . . . .

(Compl. at Ex. C (¶ 20).) Mortgage paragraph 15 requires "written" notice.

The Suarezes allege Nationstar charged fees the lender did not incur or that were not authorized by the loan documents. Again, the mortgage expressly authorizes the charges at issue

in this lawsuit.  The litigation is a "judicial action . . . that arises from [Nationstar's] actions pursuant to [the] Security Instrument."  The Suarezes were required to provide Nationstar written notice they disputed the charges before filing their complaint.  They failed to do so.

Nationstar requests this Court follow other courts who dismissed similar statutory claims for a borrower's noncompliance with mortgage paragraph 20.  *E.g., Hill v. Nationstar Mortg. LLC*, No. 15-60106-CIV, 2015 WL 4478061, at *3 (S.D. Fla. July 6, 2015) ("[T]he Homeowners' failure to provide notice and an opportunity to cure requires dismissal"); *Trevathan v. Select Portfolio Servicing, Inc.*, 142 F.Supp.3d 1283, 1290-1291 (S.D. Fla. 2015) (same); *Sotomayor v. Deutsche Bank Nat'l Trust Co.*, No. 0:15-CV-61972-WPD, 2016 WL 3163074, at *2 (S.D. Fla. Feb. 5, 2016), *order clarified,* No. 0:15-CV-61972-WPD, 2016 WL 3163075 (S.D. Fla. Mar. 18, 2016) (dismissing claim that "payoff statement was inaccurate" because borrower failed to comply with pre-suit notice requirement under paragraph 20) (internal citations omitted).  And Nationstar, as servicer, can enforce the notice and cure provision. *See Kurzban v. Specialized Loan Servicing, LLC*, No. 17-CV-20713, 2018 WL 1570370, at *3 (S.D. Fla. Mar. 30, 2018) ("Courts in this district consistently hold that a notice-and-cure provision in a mortgage applies to actions against a servicer."); *Charles v. Deutsche Bank Nat'l Trust Co.*, No. 1:15-CV-21826-KMM, 2016 WL 950968, at *4 (S.D. Fla. Mar. 14, 2016) (finding mortgage servicer could enforce the mortgage's notice and cure provision against the borrower).

## VI.   CONCLUSION

The Suarezes cannot state any claim for relief.  Their FDCPA and FCCPA claims fail because foreclosure counsel's settlement letter does not constitute Nationstar's attempt to collect a debt.  Even if it did, the charges listed in the letter were legitimate and authorized.  The Suarezes' Fla. Stat. 701.04 claim cannot survive because Nationstar does not hold the mortgage, the Suarezes

did not request a payoff statement, and foreclosure counsel did not include improper charges in the settlement correspondence. The Suarezes' causes of action also fail because the litigation privilege applies and they did not satisfy their notice and opportunity to cure requirement. Nationstar respectfully requests the Court dismiss the Suarezes' complaint with prejudice.

Dated: January 27, 2023

Respectfully submitted,

/s/ *Hallie S. Evans*
Hallie S. Evans
**TROUTMAN PEPPER HAMILTON SANDERS LLP**
Fla. Bar #309028
600 Peachtree Street NE, Suite 3000
Atlanta, Georgia 30308-2216
Telephone: (470) 832-5580
Primary Email: hallie.evans@troutman.com
Secondary Email: christina.hill@troutman.com
Attorney for Defendant, Nationstar Mortgage LLC d/b/a Mr. Cooper

**CERTIFICATE OF SERVICE**

I hereby certify that on January 27, 2023, a true and correct copy of the foregoing **Motion to Dismiss** was filed electronically via the Court's system. Notice of this filing will also be served on the counsel for Plaintiff via first class mail and electronically.

Bruce Botsford
2524 Flamingo Lane
Ft. Lauderdale, Florida 33312
E-Mail: service@botsfordlegal.com
botslaw@gmail.com

*Hallie S. Evans*
Hallie S. Evans